UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| FAITH J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:20cv209 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(a), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since February 9, 2017, the alleged onset date (20 CFR 404.1571 *et seq*,, and 416.971 *et seq*.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); asthma; emphysema; hypertension; and carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1420(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently climb ramps and stairs, frequently climb ladders, ropes or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation.  She can frequently use the bilateral hands to handle, finger, and feel.

6. The claimant is capable of performing past relevant work as a certified nurse assistant (355.674-014, SVP 4) and a loan specialist (205.367-022, SVP 4).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity as generally performed in the national economy (per the DOT) (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 24, 1962 and was 54 years old, which is defined as an individual of "closely approaching advanced age", on the alleged disability onset date.  On May 23, 2017, the claimant attained the age of 55 and subsequently changed age category to "advanced age" (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

3

    10.    In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from February 9, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f).

(Tr.17-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 15, 2021. On April 29, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 13, 2021. Upon full review of the record in this cause, this Court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Shortly before her alleged onset date of disability, in January 2017, Plaintiff sought treatment from her treating physician, Shelley Sandiford, M.D., for hand pain that radiated to her forearms with tingling that was increased by pronation and supination. (Tr. 571-74.) She underwent electromyogram (EMG) testing for this pain, numbness, and tingling. (Tr. 495.) These findings demonstrated bilateral carpal tunnel syndrome. (Tr. 496.) At follow-up, Dr. Sandiford reported that Plaintiff's severe carpal tunnel symptoms continued. (Tr. 567-59.) She had wrist pain on examination, and Dr. Sandiford prescribed medication with wrist splints. (Tr. 569.)

On June 7, 2017, Dr. Sandiford treated Plaintiff for an acute exacerbation of her COPD with diffuse wheezing. (Tr. 561-63.) On June 30, S. Toya, M.D., treated Plaintiff for bronchitis and asthma. (Tr. 368-72.) Plaintiff also complained of radiating back pain, and a lumbar spine x-ray demonstrated some arthritic changes. (Tr. 500-01.) In July, Dr. Sandiford reported that Plaintiff had continued breathing difficulty as well as ongoing lower back pain. (Tr. 555-57.) In August, pulmonary specialist, H. Safadi, M.D., noted Plaintiff's difficulties with coughing, wheezing, and shortness of breath with minimal exertion. (Tr. 396.) On exam, she had hyperresonant percussion, rhonchi, and decreased breath sounds bilaterally. (Tr. 398.) Dr. Safadi concluded that Plaintiff was experiencing a flare of her COPD with bronchiolitis. (Tr. 395-96.) He also diagnosed moderate persistent asthma. (Tr. 395.) Plaintiff declined hospital admission, so Dr. Safadi prescribed medication along with four times daily nebulizer use. (Tr. 396.) At

follow-up, Dr. Safadi noted continued hyperresonant percussion with a prolonged phase of forced exhalation and decreased breath sounds bilaterally. (Tr. 403.) At Plaintiff's August appointment, Dr. Sandiford also noted ongoing breathing difficulty with chest pain. (Tr. 552-54.)

On August 30, Plaintiff sought treatment from Dr. Sandiford for increased labored breathing. (Tr. 549.) Dr. Sandiford noted that Plaintiff was markedly tachypneic with coarse breath sounds and wheezing. (Tr. 550.) Plaintiff's accompanying friend reported that Plaintiff had increasing breathing problems, despite her at-home breathing treatments, to the point she was unable to speak at times. (Tr 549.) Dr. Sandiford administered a nebulizer treatment, but Plaintiff did not respond and was transferred to the Emergency Room. (Tr. 551.) Emergency Department notes set forth Plaintiff's shortness of breath, wheezing, and coughing. (Tr. 502-18.) On exam, she had crackling in her right lung and diffuse wheezing. (Tr. 505.) Her respiratory distress improved with treatment, and she declined admission for this COPD exacerbation. (Tr. 507.)

During September visits, Dr. Safadi noted Plaintiff continued to battle bronchitis with wheezing, rhonchi, decreased breath sounds bilaterally, and hyperresonant percussion on exams. (Tr. 407, 411.) A chest x-ray also showed emphysematous changes. (Tr. 411.) Dr. Sandiford's September notes documented Plaintiff was anxious, tired-appearing, and tearful with wheezing and a tachycardiac heart rate. (Tr. 547.) Along with medication, Dr. Sandiford recommended maintaining adequate nutrition to keep up with the higher energy requirements of breathing through narrowed and damaged lungs, limiting cold air exposure, and identifying and avoiding asthma triggers. (Tr. 547-48.)

In October, Dr. Safadi noted a prolonged phase of forced exhalation and decreased breath sounds bilaterally (Tr. 616.) He diagnosed moderate persistent asthma; COPD with acute lower

6

respiratory infection; and asthma-COPD overlap syndrome, with a recommendation for nebulizer use every six hours. (Tr. 613-14.)

In November, Agency consultant, R. Gupta, M.D., noted Plaintiff's reports of shortness of breath and coughing spells with excessive mucus when doing most activities despite use of inhalers and breathing treatments; aggravating factors included smells of different chemicals. (Tr. 624.) With dynamometer testing using the right hand, Plaintiff was able to generate 11.9 kilograms of force (average 28 kilograms), and using the left hand, she was able to generate 9.7 kilograms of force (average 26 kilograms). (Tr.624.) Following her examination, Dr. Gupta opined that Plaintiff was unable to do work related activities such as standing, walking, and lifting due to shortness of breath but was able to sit, carry, and handle objects. (Tr. 626.) Also in November, Dr. Sandiford treated Plaintiff for ongoing chest pain and cough despite good compliance with all treatments. (Tr. 757-59.)

In January 2018, Dr. Sandiford admitted Plaintiff to the Emergency Room following her office visit for chest pain and coughing, where she received medications, including intravenous medication. (Tr. 743-56.) Later in January, Plaintiff was hospitalized for an acute COPD exacerbation despite medication and nebulizer treatments. (Tr. 808-46, 823.) She had shortness of breath with rest and exertion and was tachycardic with wheezing. (Tr. 810, 812.) At discharge, she was instructed to use the nebulizer every four hours. (Tr. 832.)

In February and March, Dr. Safadi treated Plaintiff's COPD exacerbations. (Tr. 913-21.) In April, Dr. Sandiford noted that Plaintiff continued to have severely intense COPD; hand, back, and knee pain; and daily chest pain. (Tr. 891-92.) In May, Dr. Safadi concluded that Plaintiff was unable to do pulmonary function testing because her condition was not controlled. (Tr. 923.) She

7

had rhonchi and decreased breath sounds bilaterally. (Tr. 925.)

On June 14, 2018, Dr. Safadi reported Plaintiff's dyspnea on exertion, chronic cough, wheezing, sputum production, chest pain, and asthma. (Tr. 780.) He categorized her COPD under the GOLD classification as Stage 3, consistent with further worsening of airflow limitation, greater shortness of breath, reduced exercise capacity, and repeated exacerbations that impacted her quality of life. (Tr. 781.) He opined that she was limited to standing 15 minutes at a time, sitting two hours at a time, no hours working, no occasional lifting, and intolerance to environmental irritants of dust, fumes, and smoke. (Tr. 781.)

In August, Dr. Safadi noted Plaintiff's ongoing problems with coughing, wheezing, and shortness of breath. (Tr. 935.) She had decreased breath sounds bilaterally. (Tr. 936.) In October, Dr. Safadi hospitalized Plaintiff for an acute COPD exacerbation with chest pain. (Tr. 847-84, 937-42.) She had decreased breath sounds with rhonchi and wheezing and was hyperresonant to percussion. (Tr. 71.) At follow-up, Plaintiff reported to Nathaniel Ross, M.D., that she was no longer able to do a task like cleaning without getting breathless. (Tr. 885.) Dr. Ross assessed an acute exacerbation of COPD with bronchitis and chest pain. (Tr. 886.) Later in October, Dr. Safadi again reported rhonchi and decreased breath sounds with hyperresonant percussion. (Tr. 947.)

In December, Dr. Safadi determined Plaintiff's condition had worsened and warned her that if she did not improve with the medication change that she would need to be treated at the Emergency Room. (Tr. 948-52.) She had hyperresonant percussion, a prolonged phase of forced exhalation, wheezing, rhonchi and decreased breath sounds bilaterally. (Tr. 952.) In February 2019, Mary Hutchison, F.N.P., noted that Plaintiff's chest pain continued and radiated to her

8

back. (Tr. 964.) Plaintiff was tearful, feeling that she was not improving. (Tr. 964.)

In addition to Plaintiff's treating and examining physicians, in November 2017, J. Eskonen, D.O., reviewed the record for the Agency and opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the medical evidence alone. (AR 72-73.) In May 2018, M. Brill, M.D., affirmed that Plaintiff's symptoms were supported by the medical evidence alone. (AR 101.) Dr. Eskonen also opined that Plaintiff could perform a range of light work with postural and environmental limitations. (Tr. 73-75.) Dr. Brill opined that Plaintiff could perform a range of medium work with postural and environmental limitations. (Tr. 101-05.)

At the hearing before the ALJ, Plaintiff testified that she struggled with ongoing shortness of breath, wheezing, coughing, and chest pain. (Tr. 46-52, 244.) More than half of the days of the week, she became out of breath even walking around in her house. (Tr. 48.) Her breathing difficulties were aggravated by environmental factors such as dust as well as smells from things like perfume, cologne, and deodorant. (Tr. 52.) For example, Plaintiff no longer went to church because of the smells. (Tr. 58.) She also had carpal tunnel in both hands with numbness, pain, and some swelling despite wearing braces. (Tr. 53-55.) She had difficulty with fine manipulation like buttoning, grasping and holding items, and doing tasks that required strength like opening jars. (Tr. 54-56.)

When Plaintiff applied for benefits, the Agency employee noted that she had problems with breathing and talking; Plaintiff sometimes had to wait to answer because of coughing. (Tr. 303.) In reports to the Agency, Plaintiff set forth that she had very limited activities which she did slowly and often with help due to her respiratory problems. (Tr. 321, 330, 333-37.) Plaintiff had

9

increased respiratory intolerance to environmental irritants like perfumes. (Tr. 325, 300, 340, 344, 349.) She also reported her ongoing upper extremity pain, numbness, and swelling despite using wrist braces. (Tr. 324, 339-40.) She could not sit or stand for long periods because of her radiating back pain. (Tr. 325, 330, 349.) She also acknowledged that she had become depressed, including having crying episodes and difficulty getting out of bed to start the day. (Tr. 345.)

The vocational expert testified that Plaintiff had past relevant work as a certified nurse assistant (CNA) at SVP level 4, normally performed at the medium level but performed by Plaintiff at the very heavy level and work as a loan specialist, with an SVP of 4, generally performed at the sedentary level but performed by Plaintiff at the light level. (Tr. 42.) She had no transferable skills. (Tr. 42.) Through a series of hypothetical questions, the ALJ asked the vocational expert to assume someone who could perform medium work with frequently climbing ramps and stairs; frequently climbing ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation; and frequently using her hands to handle, finger, and feel. (Tr. 59-61.) The vocational expert testified that such an individual could perform Plaintiff's past work as CNA as generally performed and as a loan specialist both as generally and specifically performed. (Tr. 59-61.) The vocational expert also identified other work. (Tr. 59-61.) If hand use were reduced to occasional, the vocational expert testified: "It would eliminate all work." (Tr. 62.)

In support of remand, Plaintiff first argues that the ALJ erred in her assessment of Plaintiff's treating specialist, Dr. Safadi. As discussed above, Dr. Safadi, a pulmonary specialist, opined to limitations including standing 15 minutes at a time, sitting two hours continuously, no

lifting, and an intolerance to environmental irritants of dust, fumes, and smoke. (Tr. 781.) As Plaintiff's claim was filed after March 27, 2017, the new regulations apply which eliminate the "controlling weight" instruction for treating physician opinions. The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form the foundation of the current treating source rule." The ALJ should also consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how persuasive she finds the medical opinions in the record, specifically setting forth how she considered the supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ found Dr. Safadi's opinion "unpersuasive" because: (1) Dr. Safadi "did not identify the objective evidence in his treatment notes to support his opinion"; (2) Plaintiff had normal oxygen saturation and no cyanosis or clubbing on some examinations; (3) Dr. Safadi's opinion was unsupported by the imaging and pulmonary function diagnostic findings; (4) Plaintiff had only two hospitalizations during the critical time along with Emergency Room visits and responded to treatment; and (5) Plaintiff did not stop smoking until after Dr. Safadi's opinion. (Tr. 23.) Plaintiff contends that these reasons fail to support the ALJ's finding that Dr. Safadi's opinion was not persuasive.

Plaintiff points out that an ALJ cannot find a treating opinion unsupported just because the physician did not reiterate the supporting objective evidence on the form. Rather, the ALJ must assess the entirety of the treatment record. *Larson v. Astrue*, 615 F.3d 744, 750-51 (7th Cir. 2010). Plaintiff further points out that the ALJ did not explain why she perceived select findings,

11

such as swelling of the toes or fingers (clubbing) and turning blue (cyanosis), to be most important in determining if Plaintiff required vocational limitations. *See Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017). Plaintiff claims that the ALJ compounded this error by not addressing the supportive clinical findings from Dr. Safadi's examinations, including hyperresonant percussion, rhonchi, decreased breath sounds, wheezing, and prolonged exhalation. (Tr. 398, 403, 407, 411, 616, 925.) *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (ALJ must confront evidence that does not support her position). The ALJ also found that diagnostic testing such as pulmonary function capacity tests undercut Dr. Safadi's opinion. (Tr. 23.) Plaintiff points out that she had pulmonary function test results with FEV1 results of listing level severity, which would direct a finding of disability based solely on medical findings if the testing had met the technical requirements of the Listing. (Tr. 958-61.) Yet the ALJ offered no explanation why such marked findings did not support Dr. Safadi's opinion.

Plaintiff further argues that the ALJ also failed to recognize the exponential exacerbating factor of the combination of asthma and COPD, referred to as COPD-asthma overlap. (Tr. 396, 614, 870, 923); *Childress*, 845 F.3d at 792 ("The administrative law judge seems not to have realized that Childress's treating physicians considered all his problems in combination when assessing his ability to stand or sit for long periods of time. That is the correct approach."); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("the ALJ may not simply ignore evidence").

Likewise, the ALJ did not explain her finding that Plaintiff's need for Emergency Care and repeated hospitalizations somehow undercut Dr. Safadi's opinion, particularly considering that this frequency is nearly listing level severity. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("the ALJ's reasons for giving little weight to Dr. Paul's most recent opinions are

12

inadequate to 'build an accurate and logical bridge between the evidence and the result.'"). The ALJ observed that Plaintiff's condition improved with treatments during hospitalizations and Emergency Care[2] (Tr. 23), but, as this Court has set forth, improvement or "doing well" after treatment is "not the same as an endorsement of fitness to work. A medical professional is best positioned to decide the significance of those findings . . . ." *Carl D. v. Saul*, 1:20-CV-47-JB, 2021 WL 363599, *5 (N.D. Ind. Feb. 3, 2021).

Finally, the ALJ opined that Plaintiff's continued smoking undercut Dr. Safadi's opinion that Plaintiff should avoid airborne irritants. (Tr. 23.) The record shows that Plaintiff stopped smoking at various times but then had periods of relapse before completely stopping smoking in 2018. (Tr. 552, 45-46, 401, 614, 923, 933, 949.) Plaintiff points out that the ALJ did not explain why Dr. Safadi's consistent encouragement to stop smoking, an addiction with which Plaintiff struggled, undermined his opinion that Plaintiff should avoid environmental factors such as smoke.

The ALJ's errors with evaluating Dr. Safadi's opinion, noted above, are compounded by the absence of the analysis required by the new regulations. Although the regulations specifically require the ALJ to discuss consistency, the ALJ did not address the consistency of Dr. Safadi's opinion with other record evidence. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(c)(b)(2); *see also Kaehr v. Saul*, 3:19-CV-1171-PPS, 2021 WL 321450, *3 (N.D. Ind. Feb. 1, 2021) (finding ALJ reversibly erred in assessing the treating opinion under the new regulations: "In this case, the ALJ mentions the consistency factor, finding Dr. Macellari's opinion is not consistent with other things

---

[2] The Court notes here that COPD is an incurable, progressive disease. Emergency Room treatment can ease the flare-ups of the disease and enable the patient to breathe better for a time, but the treatments do not, and cannot, improve the patient's underlying condition.

13

in the record. But he did not consider the totality of the record in evaluating the consistency of Dr. Macellari's opinion...").

Plaintiff notes that Dr. Safadi's opinion is consistent with the opinion of the Agency examining expert, Dr. J. Eskonen, D.O., that Plaintiff would be unable to engage in exertional work activities of standing, walking, and lifting due to her respiratory problems. (Tr. 626.) As Plaintiff points out, Dr. Safadi's opinion also was consistent with the evidence from treating general physicians Drs. Sandiford and Ross that Plaintiff's respiratory condition was significantly limiting. (Tr. 561-63, 547-57, 743-59, 891-92, 885-86.) In addition, it is consistent with the classification as Stage 3 under the GOLD system, which, as noted above, is consistent with further worsening of airflow limitation, greater shortness of breath, reduced exercise capacity, and repeated exacerbations that impacted her quality of life. (Tr. 781.)

The ALJ also did not consider the consistency between Dr. Safadi's opinion and the evidence from the Agency employee who noted Plaintiff's problems with breathing, talking, and answering due to coughing. (Tr.303.) Moreover, there is no indication that the ALJ considered the other regulatory factors, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). For example, the ALJ did not indicate why Dr. Safadi's treatment relationship and specialization did not render the opinion more persuasive than the opinions from the Agency reviewing doctors who were not treating specialists. (Tr. 23.)

For all the above reasons, remand is warranted on the issue of the proper assessment of Dr. Safadi's opinion.

14

Next, Plaintiff argues that the ALJ erred in assessing her manipulative limitations. The ALJ found that Plaintiff had severe carpal tunnel syndrome but nonetheless could frequently use both her hands to handle, finger, and feel with no additional upper extremity limitations. (Tr.17, 19.) The vocational expert testified that if Plaintiff's manipulative abilities were more limited, and she could only occasionally handle, finger, and feel, that there would be no jobs available given her additional limitations. (Tr. 62.)

Plaintiff argues that the ALJ did not explain why she found that Plaintiff could use her hands for more than five hours daily given: her severe carpal tunnel syndrome; right grip strength of 42.5 percent of normal; left grip strength of 34.6 percent of normal; corroborative EMG results of carpal tunnel syndrome; prescribed wrist splint use; wrist pain on examination; radiating hand pain increased by pronation and supination; upper extremity numbness and tingling; and difficulty performing daily tasks due to her hand problems. (Tr. 62, 624, 495-96, 571-74, 53-56.)

This Court agrees that the failure of the ALJ to set forth a supported basis for her finding that Plaintiff could frequently use her hands compels remand. *Briscoe ex rel. Taylor*, 425 F.3d at 352 (The ALJ's failure to properly explain how she arrived at a residual functional capacity determination "is sufficient to warrant reversal of the ALJ's decision."); *see also* Social Security Ruling 96-8p, 1997 WL 374184, *7 ("[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).").

Next, Plaintiff argues that the ALJ failed to properly assess her symptoms. As noted above, the ALJ erred in failing to explain why she focused on certain findings such as extremity swelling (clubbing) or turning a bluish tint (cyanosis) which she also focused on in discounting

15

Plaintiff's symptoms. (Tr. 22.) The ALJ failed to explain why Plaintiff's symptoms were not supported by the many corroborating findings including hyperresonant percussion, rhonchi, decreased breath sounds, wheezing, and prolonged exhalation. (Tr. 398, 403, 407, 411, 616, 925.) *See Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (erred by not explaining why positive objective findings did not support symptoms). Moreover, the ALJ failed to acknowledge that the Agency reviewing physicians found Plaintiff's symptoms supported by the medical evidence alone. (Tr. 72-73, 101.) Social Security Ruling 16-3p, 2016 WL 1119029, *6 (S.S.A.) ("State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms.").

The ALJ gave considerable weight to the fact that Plaintiff's condition improved with intensive treatments, such as she received during her Emergency Room visits. However, improvement is not inconsistent with disability. *Meuser v. Colvin*, 838 F.3d 903, 913 (7th Cir. 2016); *see also Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.").

The ALJ additionally relied on Plaintiff's difficulty stopping smoking to discount her symptoms. (Tr. 22.) Plaintiff points out that te Seventh Circuit has emphasized that smoking should be considered as undercutting disability only in the narrow situation where the record demonstrates cessation would restore ability to work, a situation not present here. *Rousey v. Heckler*, 771 F.2d 1065, 1069-70 (7th Cir. 1985); *see also Shramek v. Apfel*, 226 F.3d 809, 813

16

(7th Cir. 2000) (smoking "is an unreliable basis on which to rest a credibility determination."). The Commissioner contends that Plaintiff's continued smoking undercuts her allegation that she cannot tolerate any significant environmental irritation. However, the Commissioner is making assumptions about unknown facts. While smoking is obviously harmful for someone with COPD, the fact that Plaintiff continued to smoke cigarettes, which may have been low tar, which likely were filtered, which may have only occurred occasionally, does not mean that Plaintiff would not have suffered breathing problems when inhaling unfiltered smoke, cleaning chemicals, dusty offices, etc., for an entire work-day.

For the above reasons, remand is warranted for a proper assessment of Plaintiff's symptoms. Plaintiff also points out that the ALJ failed to assess the evidence from the Agency expert, Joshua Eskonen, D.O., and compare Plaintiff's abilities with her past work demands. This issue should also be re-assessed upon remand.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: November 17, 2021.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court